825 A.2d 1042

**Gabrielle I. FRY, et al.**

**v.**

**Sonny James CARTER, et al.**

**No. 113, Sept. Term, 2002.**

Court of Appeals of Maryland.

June 12, 2003.

---

Paul D. Bekman (Michael P. Smith, Salsbury, Elements, Bekman, Marder & Adkins, L.L.C., on brief), Baltimore, for petitioners.

D. Elizabeth Walker (Amy Leete Leone, McCarthy Wilson, on brief), Rockville, for respondents.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

RAKER, J.

In this wrongful death and survival action, we must decide whether, in a negligence action following the collision of a tractor-trailer and a roadside worker, it was error for a trial court to instruct the jury on unavoidable accident. We shall hold that such an instruction was inapplicable given the facts of this case and, further, that an unavoidable accident instruction should never be given in a negligence action.

I.

Howard C. "Skip" Fry, Jr. (Fry) worked as a traffic control manager for Dewey Jordan, Inc., a company that builds highways and bridges. On the morning of October 7, 1999, at approximately 9:00 a.m., Fry was killed alongside a highway when he was struck by roof trusses extending over the side of a passing flat-bed tractor-trailer.

At the time of the accident, Fry and his assistant, Melvin Shank, were preparing to close a portion of Interstate Highway 270 (I–270) near the exit ramp to Interstate Highway 70

(I–70).  Fry and Shank were in the "gore"[1] between the right south-bound lane of I–270 and the exit ramp of I–70;  they were not on the roadway.  Fry wore a bright orange safety vest and stood about twenty-five feet south of Shank.  Both men were pushing bright orange barrels toward I–270 in preparation for shutting down the right, southbound lane. Fry's barrel separated from its base, and he bent over it in an attempt to reattach the barrel to its base.

That same morning, respondent Sonny James Carter, an employee of respondent Structural Systems, Inc., was driving a tractor-trailer south on I–270, transporting a wide load of roof trusses to a job site.  Carter drove frequently through the area where the accident occurred in his personal vehicle and in tractor-trailers, and he knew about the ongoing construction.  Carter had a blanket permit from the Maryland State Highway Administration (SHA) to carry a wide load measuring twelve feet in width or less.[2]  On the day of the accident, his load of roof trusses was lined up flush with the left-hand side of the truck and overhung the right side of the trailer bed.  The maximum width of the load at the beginning of the trip was eleven feet, five inches.[3]

The highway had two southbound lanes.  Because of the construction, the lanes measured only eleven feet wide rather than the standard twelve feet.  Carter testified that he saw a "Construction Ahead" sign approximately one mile before the construction site.  As he approached the gore where Fry and Shank were preparing to close the lane, Carter was traveling

---

1.  A gore is the triangular, separating area at the intersection between an exit-ramp roadway and the main roadway.

2.  Maryland law restricts the width of vehicles traveling on state highways.  Maryland Code § 24–102 (1977, 2002 Repl.Vol.) of the Transportation Article.  The State Highway Administration may issue a permit allowing an oversized vehicle to use the state highways.  *See* § 24–112;  *see also* COMAR 11.04.01.03 (regulating blanket hauling permits).

3.  The roof trusses shifted during transport;  measurements taken by police after the accident recorded the load as eleven feet, eight inches wide.

in the right lane.[4]  He noticed Shank standing on the shoulder of the road but did not notice Fry.  When he saw Shank, Carter sounded the tractor-trailer's horn to warn him.  Carter attempted to move into the left lane but at that time another vehicle was in the left lane.  Instead, Carter moved his truck as far left as possible while remaining in the right lane.  Shank stepped back, and, as Carter passed, Carter looked into his rearview mirror to check the position of the roof trusses.  As he was looking into the rearview mirror, he noticed Fry starting to straighten up after adjusting the barrel.  The trusses, which protruded into the gore, struck Fry in the head and killed him.

Fry's wife, Janice H. Fry, and his two adult daughters, Gabrielle I. Fry and Adrienne C. Dennis, brought suit against respondents Sonny James Carter, his employer and trailer owner Structural Systems, Inc., and tractor owner James S. Grimes, Inc.,[5] alleging that their negligence caused the wrongful death of Fry.  The Circuit Court for Montgomery County granted petitioners' motion for judgment on the issues of contributory negligence and assumption of the risk, but denied their motion for judgment on the issue of negligence.  Over petitioners' objection,[6] the court instructed the jury on unavoidable accident as follows:

"[A]n unavoidable accident is an inevitable occurrence which is not to be foreseen or prevented by vigilance, care, and attention and not occasioned by or contributed to in any manner by an act or omission of the party claiming the

---

4.  During the drive that morning, Carter traveled in both the left and right lanes.

5.  James S. Grimes, Inc. was later dismissed as a party defendant.

6.  There was no objection to the form of the instruction.  Petitioners objected to the substance of the instruction and argued to the trial court that it was inapplicable because the issue presented was Carter's negligence in operating his truck, not last-minute avoidability.  Petitioners also objected on the basis that an unavoidable accident instruction is inappropriate when there is evidence of negligence.

accident was unavoidable. And in this case, the defendant claims that the accident was unavoidable."

The jury returned a verdict of in favor of respondents.

Petitioners noted a timely appeal to the Court of Special Appeals, and respondents filed a conditional cross-appeal.[7] The Court of Special Appeals affirmed in an unreported opinion, holding that the trial court properly denied petitioners' motion for judgment on negligence because there was sufficient evidence from which the jury could have found no negligence. The intermediate appellate court also held that, under the circumstances, an unavoidable accident instruction was proper.

We granted the Fry family's petition for writ of certiorari to consider the single issue of whether the trial court erred by instructing the jury on unavoidable accident. *Fry v. Carter*, 372 Md. 684, 814 A.2d 570 (2003). We hold that it was reversible error to instruct the jury on unavoidable accident. We have also reexamined the question and conclude that an instruction on unavoidable accident should not be given in any negligence case.

## II.

Before this Court, petitioners argue that the trial court erred in instructing the jury on unavoidable accident. They contend that collisions between a driver and a pedestrian are not inevitable and that they are almost always the product of negligence. They argue that Carter had ample opportunity to avoid the accident; therefore, the trial court erred in giving an unavoidable accident instruction.

Respondents counter that the trial court properly instructed the jury on unavoidable accident because there was evidence that the accident was inevitable. They maintain that the negligence of a third party rendered the accident inevitable,

---

7. Inasmuch as the Court of Special Appeals affirmed the judgment in favor of respondents, the court did not reach respondents' conditional cross-appeal.

presenting the theory that because SHA was negligent in not notifying oversize load permit holders of narrow lanes in the area and because the lanes were narrowed to eleven feet from the standard twelve feet, Carter could not have prevented the collision. Under this "special circumstance," an unavoidable accident instruction was appropriate. Respondents further argue that, even if the trial court erred in giving the instruction, any error was harmless.

## III.

An unavoidable accident is an occurrence that is not foreseeable or anticipated and could not have been prevented by the exercise of ordinary care under the attendant circumstances. Although many states still permit a trial judge to instruct the jury in motor vehicle accident cases on the concept of unavoidable accident, several states have reexamined the doctrine and have disapproved, limited or totally abolished its use on the grounds that the instruction was unnecessary, confusing, misleading and superfluous. *See* G.L. Blum, Annotation, *Instructions on "Unavoidable Accident," "Mere Accident," or the Like, in Motor Vehicle Cases—Modern Cases* 21 A.L.R. 5th 82, § 4 (2002). Moreover, there is an increasing trend by courts that have addressed the use of the instruction to find that the confusion and harm engendered by the use of the instruction far outweighs its usefulness. *See City of Phoenix v. Camfield,* 97 Ariz. 316, 400 P.2d 115 (1965); *Sadorus v. Wood,* 230 A.2d 478, 480 (D.C.1967); *Smith v. Canevary,* 553 So.2d 1312, 1314–15 (Fla.Dist.Ct.App. 1989); *George v. Guerette,* 306 A.2d 138, 142 (Me.1973); *Buford v. Riverboat Corp.,* 756 So.2d 765, 771 (Miss.2000); *Graham v. Rolandson,* 150 Mont. 270, 435 P.2d 263, 272 (1967); *Hunter v. Johnson,* 178 W.Va. 383, 359 S.E.2d 611, 613 (1987).

The classic definition in Maryland of an unavoidable accident was articulated by Judge McSherry in 1894 as "an inevitable occurrence, not to be foreseen and prevented by vigilance, care and attention, and not occasioned or contributed to, in any manner, by the act or omission of the company,

its agents, employees or servants." *Washington Turnpike v. Case*, 80 Md. 36, 45–46, 30 A. 571, 573 (1894). In other words, in order to constitute an unavoidable accident, the event must have occurred without negligence on the parties' part.

The unavoidable accident instruction has had a checkered history in Maryland. Our review of the jurisprudence in Maryland addressing the "unavoidable accident" instruction reveals little guidance and often inconsistent language. Since the end of the nineteenth century, approximately twenty-five cases in this Court have addressed the form of the instruction and the propriety of its use. Although trial judges have been permitted to instruct juries in motor vehicle accident cases on the concept of unavoidable accident under certain circumstances, those circumstances often have been conflicting. For example, we have held that the instruction was appropriate when, along with evidence of negligence, there is evidence that an accident occurred without negligence; we also have held the instruction to be inapplicable when there is evidence of negligence. *Compare Kaline v. Davidson*, 146 Md. 220, 223–24, 126 A. 68, 69–70 (1924) (giving of instruction appropriate because of evidence that the accident was unavoidable), *with Vizzini v. Dopkin*, 176 Md. 639, 642–43, 6 A.2d 637, 638–39 (1939) (holding that granting of unavoidable accident instruction is error because of evidence of negligence).

Our cases have stated that whether an unavoidable accident instruction is appropriate depends on the facts and circumstances of each individual case. *Vizzini*, 176 Md. at 642, 6 A.2d at 638. This Court has upheld the granting of an unavoidable accident instruction under limited circumstances. *See, e.g., Kaffl v. Moran*, 233 Md. 473, 478–79, 197 A.2d 240, 242 (1964) (giving of instruction upheld because court mentioned "unavoidable accident" as an informal phrase rather than as a formal instruction); *Lloyd v. Yellow Cab Co.*, 220 Md. 488, 492–96, 154 A.2d 906, 908–10 (1959) (upholding informal oral mention of unavoidable accident but observing that a formal unavoidable accident instruction would have been inappropriate under the circumstances); *State v. Lupton*, 163 Md. 180, 193–94, 161 A. 393, 399 (1932) (instructing on

unavoidable accident acceptable because of evidence that the defendant was not negligent but noting that the instruction "might well have been refused"); *Kaline,* 146 Md. at 223–24, 126 A. at 69–70 (giving of instruction appropriate because of evidence that the accident was unavoidable).

Another line of cases has held that an unavoidable accident instruction is inappropriate when a case presents evidence of negligence. *See, e.g., Perlin Packing Co. v. Price,* 247 Md. 475, 231 A.2d 702 (1967); *People's Drug Stores v. Windham,* 178 Md. 172, 12 A.2d 532 (1940); *Vizzini v. Dopkin,* 176 Md. 639, 6 A.2d 637 (1939); *Paolini v. Western Mill & Lumber Corp.,* 165 Md. 45, 166 A. 609 (1933); *Schapiro v. Meyers,* 160 Md. 208, 153 A. 27 (1931).

In *Vizzini v. Dopkin,* we held the giving of an unavoidable accident instruction to be reversible error. 176 Md. at 643, 6 A.2d at 639. On a "sleeting and freezing" night, Dopkin's automobile struck and injured pedestrian Vizzini as he crossed the street. Dopkin argued that although he was looking straight ahead as he drove, he did not see Vizzini cross in front of him and only heard a thump as the accident occurred. The trial court granted Dopkin's request for an unavoidable accident instruction. On appeal from a jury verdict in favor of Dopkin, Vizzini objected to the unavoidable accident instruction. This Court held that it was error to grant the instruction. We reasoned:

"There was evidence in this case from which the jury might have found that the accident was not unavoidable, but that it might have been avoided by the exercise of care and caution on the part of the defendant. According to the plaintiff, he was crossing Park Heights Avenue at an intersection where he had the right of way, at a place which required the defendant to yield. The defendant said he was looking straight ahead and did not see the man pass in front of him, when it is obvious that he did pass in front of him. His failure to see the plaintiff does not relieve him of responsibility. The fact that there was rain, snow, or sleet, resulting in less visibility, is no excuse or reason for not seeing the plaintiff. When weather conditions or darkness are such as

to interfere with or shorten the view of the road, it only serves to increase the degree of care required of a driver." *Id.* at 643, 6 A.2d at 639. Because there was evidence of negligence—that the accident could have been avoided—the trial court erred by instructing the jury on unavoidable accident.

In *Paolini v. Western Mill & Lumber Corp.*, this Court held that it was error to instruct the jury on unavoidable accident in light of evidence of negligence. 165 Md. at 54–55, 166 A. at 613. Paolini, an automobile driver, sued Western Mill & Lumber Corporation for personal injuries and property damage following a collision with a company truck on a rainy March day. The parties disputed many facts, particularly as to which party had the right of way. The trial court granted the company's request for an unavoidable accident instruction. This Court reversed, remarking that

"[i]n this case . . . the collision could have been avoided by care on one side or the other, plaintiff or defendant, and the description of unavoidable accident appears to be inapplicable. An unavoidable accident is defined by Judge McSherry in *Washington Turnpike v. Case*, [80 Md. 36, 30 A. 571 (1894)], as 'an inevitable occurrence, not to be foreseen and prevented by vigilance, care and attention, and not occasioned or contributed to, in any manner, by the act or omission of the company, its agents, employees or servants.' "

"The defendant's second prayer, we think, should not have been granted."

*Id.* at 55, 166 A. at 613. Evidence of negligence precluded an unavoidable accident instruction.

Our cases also have held that the instruction was inappropriate because an evidentiary foundation was lacking. *See, e.g., State v. Greaves*, 191 Md. 712, 62 A.2d 630 (1948); *Fogle v. Phillips*, 191 Md. 114, 60 A.2d 198 (1948); *Garozynski v. Daniel*, 190 Md. 1, 57 A.2d 339 (1948); *American Stores Co. v. Herman*, 166 Md. 312, 171 A. 54 (1934). In *Fogle*, the Phillips' car approached the crest of a hill from the north, and Fogle

approached the crest from the south; the two cars collided because Fogle was in Phillips' lane. 191 Md. at 117, 60 A.2d at 199. At trial, Fogle argued that he had driven into the southbound lane to avoid four pedestrians. When he reached the top of the hill, he saw the Phillips' car, applied his brakes, and attempted to move back into his lane. Fogle claimed that he did not have the opportunity to avoid the Phillips' car and that, under the circumstances, the accident was unavoidable. This Court held that the trial court properly refused to instruct the jury on unavoidable accident because there was no evidence to show that the accident was unavoidable. *Id.* at 119–20, 60 A.2d at 200. In doing so, we recounted earlier cases discounting the notion that automobile accidents occur without negligence: "It must be rarely true that, when two people moving toward a meeting point, both in control of their movements and relative positions, actually collide, the collision can be classed as an inevitable accident." *Id.* at 118, 60 A.2d at 199 quoting *Coplan v. Warner,* 158 Md. 463, 467, 149 A. 1, 3 (1930). We observed that Fogle did not claim

> "that there was any sudden action by the pedestrians which caused him to swerve to the left of the road. On the contrary, his testimony is that he saw them 'from seventy-five or one hundred feet or maybe a little more.' He picked them up with his lights and then started bearing left. He said this was 'quite a ways from the top of the hill.' He also said he was driving from 35 to 40 miles an hour. There is, in all this evidence, nothing from which the jury could conclude that the accident with the Phillips' car was un-avoidable.... [T]he granting of [Fogle's] second prayer would have permitted the jury to speculate on something which had no evidence to support it. The real question was whether [Fogle], under *all* the circumstances, was negligent, and not whether he could not have avoided the collision at the last minute.... The sole question for the jury, there-fore, was the negligence *vel non* of [Fogle]."

*Id.* at 119–20, 60 A.2d at 200. The instruction on negligence fairly covered the legal issues, and an unavoidable accident instruction was inappropriate.

In *State v. Greaves,* 191 Md. 712, 62 A.2d 630 (1948), pedestrian Clarence Whitaker was killed by a driver, Greaves, while walking at the base of a mountain. *Id.* at 715–16, 62 A.2d at 631–32. In response to a sign indicating a steep downgrade and directing drivers to descend in second gear, Greaves shifted into second gear to begin his descent. About halfway down the snow-covered mountain road, however, Greaves shifted back up into high gear. Greaves' car started to skid as he approached Whitaker. Although Greaves tried to straighten course, his car struck Whitaker. The trial court instructed the jury on unavoidable accident; on appeal, it was argued that the instruction was misleading. This Court looked beyond the fact that the skidding occurred, noting as follows:

"Mere skidding is not evidence of an unavoidable accident. In this case the facts do not tend to show that the appellee had his car under such control as was required of him under the conditions under which he was traveling. Perhaps there was nothing the appellee could do when his car started to skid, but there is nothing to show that the car would have skidded had he obeyed the sign at the top of the mountain and kept his car in second gear all the way down. Unless there is something in the evidence showing that this accident could not have been foreseen and prevented by vigilant care and attention an unavoidable accident prayer would lead to mere speculation.... [The] testimony does not give rise to any inference that the accident could not have been avoided by care exercised before the slushy place was reached. The jury should not have been allowed to guess about it."

*Id.* at 718–19, 62 A.2d at 633. We held that the trial court erred in instructing the jury regarding unavoidable accident because there was insufficient evidence that the accident could not have been avoided.

Notably, this Court has never found error in a trial court's *refusal* to instruct the jury on unavoidable accident. *See, e.g., Perlin Packing Co. v. Price,* 247 Md. 475, 231 A.2d 702 (1967); *Baltimore Transit Co. v. Prinz,* 215 Md. 398, 137 A.2d 700

(1958); *Fogle v. Phillips*, 191 Md. 114, 60 A.2d 198 (1948); *Garozynski v. Daniel*, 190 Md. 1, 57 A.2d 339 (1948); *People's Drug Stores v. Windham*, 178 Md. 172, 12 A.2d 532 (1940); *Gwynn Oak Park v. Becker*, 177 Md. 528, 10 A.2d 625 (1940); *York Ice Machinery Corp. v. Sachs*, 167 Md. 113, 173 A. 240 (1934); *Harrison v. Smith*, 167 Md. 1, 172 A. 273 (1934); *American Stores Co. v. Herman*, 166 Md. 312, 171 A. 54 (1934); *Schapiro v. Meyers*, 160 Md. 208, 153 A. 27 (1931); *Beall v. Ward*, 158 Md. 646, 149 A. 543 (1930); *Coplan v. Warner*, 158 Md. 463, 149 A. 1 (1930); *Casey v. Suter*, 36 Md. 1 (1872). This is significant because, in many of these cases, the Court found that proper general instructions on negligence, proximate cause, and the burden of proof covered all the matters of law. *See, e.g., Fogle*, 191 Md. at 120, 60 A.2d at 200; *Garozynski*, 190 Md. at 5, 57 A.2d at 341; *Harrison*, 167 Md. at 3–4, 172 A. at 274; *Beall*, 158 Md. at 654, 149 A. at 547; *Coplan*, 158 Md. at 467–68, 149 A. at 2–3; *Casey*, 36 Md. at 3–4; *see also, e.g., Butigan v. Yellow Cab Co.*, 49 Cal.2d 652, 320 P.2d 500, 504–05 (1958) (noting that "[i]t is particularly significant that no decision in this state . . . has held that refusal to give the instruction was reversible error" and noting cases where refusal to give instruction was not error because "the jury was fully instructed on the general rules of liability for negligence"); *Fenton v. Aleshire*, 238 Or. 24, 393 P.2d 217, 221 (1964) (noting several cases holding refusal to give instruction not reversible error because instruction is merely "clumsier" manner of instructing jury on principles of negligence).

▮ In the instant case, the trial court erred by instructing the jury on unavoidable accident because there was ample evidence from which the jury could infer Carter's negligence. Carter argues that the accident was unavoidable because of SHA's negligence in not informing oversize load-hauling permit holders of the narrowed lanes in the area of the accident. He contends that there was nothing he could have done to avoid hitting Fry because the lanes were narrowed to eleven feet and because there was a car in the left lane rendering a sudden swerve impossible. These circumstances involving the

negligence of a third party, he argues, justify an unavoidable accident instruction.

The evidence at trial was conflicting, and the parties disputed the nature and number of signs warning of construction. It is clear, however, that the plaintiff presented evidence of negligence on the part of the defendant Carter. Carter was familiar with the highway and knew that construction was ongoing in the area. On the day of the accident, he saw a sign warning of construction ahead. An arrow panel sign was posted in the gore near where Fry and Shank were working, indicating that vehicles should move into the left lane. From a distance, Carter saw Shank in the road. When he saw Shank, Carter slowed his speed from 35–40 miles per hour to 30–35 miles per hour and sounded his horn. Fry, a six-foot-tall man wearing an orange safety vest, was in the same vicinity as Shank, unnoticed by Carter. The evidence, when viewed in the light most favorable to the plaintiff, indicates that the accident could have been avoided if, after seeing signs of impending road construction in the right lane, Carter had moved his tractor-trailer into the left southbound lane. Carter also could have slowed his speed further and continued to sound his horn to warn Fry of his approach. The lane conditions and the obvious presence of road workers necessitated that Carter proceed with increased diligence. The issue in the case was whether, under all the circumstances, Carter was negligent, not whether Carter could have avoided the accident at the last minute. *See, e.g., Moats v. Ashburn,* 60 Md.App. 487, 494, 483 A.2d 791, 795 (1984) (noting that the "bottom line ... is whether under *all* the circumstances the defendant was negligent and not whether he could not have avoided the collision at the last minute"). Given evidence that the accident was not unavoidable, the trial court erred in instructing the jury on unavoidable accident.

A judgment will not be reversed unless the complaining party can show both error and prejudice. *Harris v. David S. Harris, P.A.,* 310 Md. 310, 319, 529 A.2d 356, 360 (1987). Whether a party has been prejudiced depends on the facts of

each individual case. *Beahm v. Shortall,* 279 Md. 321, 332, 368 A.2d 1005, 1012 (1977). Although precise standards for determining prejudice have not been established, we have found reversible error where the error had "a prejudicial effect on the outcome of the case" or where the prejudice was substantial. *Id.* at 331, 368 A.2d at 1011.

■ In the instant case, the jury returned a general verdict in favor of defendants. Respondents' justification for an unavoidable accident instruction was that Carter was unable to do anything once he saw Fry in his truck's mirror. In closing argument, defense counsel argued that there was no evidence that when Carter saw Fry pop up there was anything that he could do to avoid hitting him and that nothing could have been done to avoid the accident. The unavoidable accident instruction was prejudicial because it permitted the jury to speculate as to whether Carter could have avoided the accident at the last minute. As this Court has made clear, the issue is not whether Carter could have avoided the accident at the last minute, but rather whether, under all of the circumstances, Carter was negligent. We have observed *supra* the general rule that an unavoidable accident instruction is inappropriate when there exists evidence of negligence. The instruction allowed the jury to speculate about last-minute happenings when there was ample evidence, if believed, from which the jury could find respondents negligent. Suggesting to the jury that it could decide the case on the grounds that the event was unavoidable was misleading because it diverted juror attention from the pivotal issue in the case—negligence. The verdict in this case was a general verdict; thus it is unclear how the jury reached its verdict. The jury might have relied upon the unavoidable accident instruction as a basis for its verdict. *See Lewis v. Crockett,* 243 Ark. 377, 420 S.W.2d 89, 92 (1967) (holding use of unavoidable accident instruction reversible error where inappropriately used and ·jury returned general verdict; thus jury could have taken instruction as basis for its verdict). The instruction was prejudicial and constitutes reversible error.

IV.

■ We next consider whether an unavoidable accident instruction is, under any set of circumstances, appropriate. We consider first the rule in Maryland, and most other jurisdictions, that a party is entitled to an instruction on the defense or theory of the defense. *See General v. State,* 367 Md. 475, 485, 789 A.2d 102, 108 (2002). An unavoidable accident, however, is not a separate defense to a negligence claim; in most jurisdictions, it is considered nothing more than a denial of negligence or a contention that the defendant's negligence, if any, was not the proximate cause of the injury.[8] *See Vespe v. DiMarco,* 43 N.J. 430, 204 A.2d 874, 880 (1964) (stating that unavoidable accident is not separate defense and is nothing more than denial of negligence); *Butigan v. Yellow Cab Co.,* 49 Cal.2d 652, 320 P.2d 500, 504 (1958) (same); *Fenton v. Aleshire,* 238 Or. 24, 393 P.2d 217, 221 (1964) (same). In Maryland, unavoidable accident is not a separate defense and thus does not fall within the category of those circumstances in which a party is entitled to an instruction reflecting the defense.

We observe next that many jurisdictions have either abolished the unavoidable accident instruction or severely limited its use. Almost half the states have abolished entirely the use of the instruction. *See, e.g., Alaska Brick Co. v. McCoy,* 400 P.2d 454, 456 (Alaska 1965); *City of Phoenix v. Camfield,* 97 Ariz. 316, 400 P.2d 115, 121 (1965); *Butigan,* 320 P.2d at 505;

---

8. Apparently, unavoidable accident was an affirmative defense in trespass actions. The California Supreme Court explained the origin of the notion as follows:

"It appears to be an obsolete remnant from a time when damages for injuries to person or property directly caused by a voluntary act of the defendant could be recovered in an action of trespass and when strict liability would be imposed unless the defendant proved that the injury was caused through 'inevitable accident.' Although exactly what was covered by this expression is not clear, it apparently included cases where the defendant was utterly without fault. 'Unavoidable accident' was then an affirmative defense to be pleaded and proved by the defendant. (See 2 Harper & James, The Law of Torts (1956), 747 et seq.; Prosser on Torts (2d ed.1955), 118.)."

*Butigan v. Yellow Cab. Co.,* 49 Cal.2d 652, 320 P.2d 500, 504 (1958).

*Lewis v. Buckskin Joe's, Inc.,* 156 Colo. 46, 396 P.2d 933, 942 (1964); *Smith v. Canevary,* 553 So.2d 1312, 1314 (Fla.Dist.Ct. App.1989); *Tolbert v. Duckworth,* 262 Ga. 622, 423 S.E.2d 229, 230 (1992); *Schaub v. Linehan,* 92 Idaho 332, 442 P.2d 742, 746 (1968); *White v. Evansville Am. Legion Home Ass'n,* 247 Ind. 69, 210 N.E.2d 845, 846 (1965); *Koll v. Manatt's Trans. Co.,* 253 N.W.2d 265, 268–69 (Iowa 1977); *Wooten v. Legate,* 519 S.W.2d 385, 386 (Ky.1974); *George v. Guerette,* 306 A.2d 138, 144 (Me.1973); *Stover v. Patrick,* 459 S.W.2d 393, 396–97 (Mo.1970); *Graham v. Rolandson,* 150 Mont. 270, 435 P.2d 263, 274 (1967); *Dyer v. Herb Prout & Co.,* 126 N.H. 763, 498 A.2d 715, 717 (1985); *Vespe,* 204 A.2d at 881–82; *Alexander v. Delgado,* 84 N.M. 717, 507 P.2d 778, 780 (1973); *Fenton,* 393 P.2d at 223; *Camaras v. Moran,* 100 R.I. 717, 219 A.2d 487, 490 (1966); *Randle v. Allen,* 862 P.2d 1329, 1336 (Utah 1993); *Hunter v. Johnson,* 178 W.Va. 383, 359 S.E.2d 611, 613 (1987); *see also* G.L. Blum, *supra,* at § 4.[9] Some jurisdictions that retain the unavoidable accident instruction limit its use and emphasize that it is rarely appropriate. *See, e.g., Oklahoma Tire & Supply Co. v. Bass,* 240 Ark. 496, 401 S.W.2d 35, 37 (1966); *Tomczuk v. Alvarez,* 184 Conn. 182, 439 A.2d 935, 940–41 (1981); *Sadorus v. Wood,* 230 A.2d 478, 480–81 (D.C.1967); *Ronningen v. Sonterre,* 274 Minn. 138, 143 N.W.2d 53, 57 (1966), *Buford v. Riverboat Corp.,* 756 So.2d 765, 771 (Miss. 2000); *Reinhart v. Young,* 906 S.W.2d 471, 472–73 (Tex.1995); *Marshall v. Goughnour,* 221 Va. 265, 269 S.E.2d 801, 804

---

**9.** The pattern civil jury instructions of several states recommend that the unavoidable accident instruction not be given. *See, e.g.,* Colorado Jury Instructions 9.11 (4th ed. 1999 & Supp.2000); Florida Standard Jury Instructions (Civil) 4.1 (2001) (noting that the "committee recommends that no charge be given on the subject of 'unavoidable accident,' this being a more appropriate subject for argument by counsel"); Idaho Jury Instructions 233 (1988); Indiana Pattern Jury Instructions (Civil) 5.37 (2d ed. 1989 & Supp.2001); South Dakota Pattern Jury Instructions 12–01 (1995 & rev.2000); Washington Pattern Jury Instructions (Civil) 12.03 (1989); Wisconsin Jury Instructions (Civil) 1000 (1989 & Supp.2002). *See Tolbert v. Duckworth,* 262 Ga. 622, 423 S.E.2d 229, 230 n. 1 (1992); Symposium, *Negligence in the Courts: The Actual Practice: Appendix Bibliography of State Jury Instructions for Negligence,* 77 Chi.-Kent L.Rev. 625 (2002).

(1980); *Van Matre v. Milwaukee Elec. Ry. & Transp. Co.*, 268 Wis. 399, 67 N.W.2d 831, 832–33 (1955).

The landmark case on the propriety of the use of this instruction is *Butigan v. Yellow Cab Co.*, 49 Cal.2d 652, 320 P.2d 500 (1958), that serves as the foundation for the modern trend disfavoring unavoidable accident instructions. The California Supreme Court observed as follows:

"In the modern negligence action the plaintiff must prove that the injury complained of was proximately caused by the defendant's negligence, and the defendant under a general denial may show any circumstance which militates against his negligence or its causal effect. The so-called defense of inevitable accident is nothing more than a denial by the defendant of negligence, or a contention that his negligence, if any, was not the proximate cause of the injury....

"It is particularly significant that no decision in this state ... has held that refusal to give the instruction was reversible error. In several cases in which error had been claimed because of such a refusal, it was held that the instruction was superfluous. The court, in *Stein v. United Railroads*, 159 Cal. 368, 373, 113 P. 663, said that it would seem absurd to burden the record with a formal statement of the self-evident truth that, if the accident occurred without the fault of either party, defendant would not be liable. *Guay v. American President Lines*, 81 Cal.App.2d 495, 513–514, 184 P.2d 539, holds that the refusal was not error because unavoidable accident is simply another way of saying that defendant is not negligent and because the jury was fully instructed on the general rules of liability for negligence. *Jaeger v. Chapman*, 95 Cal.App.2d 520, 523, 213 P.2d 404, moreover, points out that the defendant is not entitled to have his defense overemphasized and cannot complain that it is not stated in a particular way so long as it is adequately and fairly covered....

"The instruction is not only unnecessary, but it is also confusing. When the jurors are told that 'in law we recognize what is termed an unavoidable or inevitable accident' they may get the impression that unavoidability is an issue

to be decided and that, if proved, it constitutes a separate ground of nonliability of the defendant. Thus they may be misled as to the proper manner of determining liability, that is, solely on the basis of negligence and proximate causation. The rules concerning negligence and proximate causation which must be explained to the jury are in themselves complicated and difficult to understand. The further complication resulting from the unnecessary concept of unavoidability or inevitability and its problematic relation to negligence and proximate cause can lead only to misunderstanding."

*Id.* at 504–05 (citations and footnote omitted).

The Iowa Supreme Court prohibited unavoidable accident instructions in a case strikingly similar to the instant one. *See Koll*, 253 N.W.2d at 268–69. David Koll worked as part of a crew repaving the shoulder of a highway. On the day in question, he was assigned to stand on the road's shoulder and pull gravel deposited by a dump truck onto the shoulder. One of the trucks backed over Koll and killed him. The parties disputed whether the truck hit Koll or whether Koll tripped on his broom and accidentally fell into the path of the truck. At trial in the subsequently filed wrongful death suit, Koll's estate objected to the trial court instruction on unavoidable accident. The Iowa Supreme Court held that the instruction was error and noted that, under Iowa law, an unavoidable accident instruction was inappropriate in cases where there is evidence that one of the parties was negligent. *Id.* at 268. The court based its reversal, however, on "an outright condemnation of the doctrine" of unavoidable accident, thereby abolishing unavoidable accident instructions. *Id.* at 268–69.

*Fenton v. Aleshire*, 238 Or. 24, 393 P.2d 217 (1964), similarly describes the dangers of unavoidable accident instructions. The Oregon Supreme Court opined:

"In the modern law of negligence the doctrine of 'unavoidable accident' . . . is an anomaly. By definition—at least by the definition adopted by this court—it has no place as a separate and independent element in an action based on

negligence.... '[T]he Restatement of Torts does not treat unavoidable accident as an entity of the law'.... No instruction on unavoidable accident is included in the Uniform Jury Instructions in negligence cases.... In practical effect, when included in the charge of the court to the jury, it is lagniappé to the defendant—not only because it is an added 'you-should-find-for-the-defendant' type of instruction, but because it may be misunderstood by the jury as constituting some sort of separate defense."

*Id.* at 222. The court concluded that, upon reexamination of the issue, the unavoidable accident instruction was without value, was prejudicial, and should not be given in any case. *Id.* at 221–23.

In *Graham v. Rolandson*, 150 Mont. 270, 435 P.2d 263, 273 (1967), the Montana Supreme Court prohibited Montana courts from instructing jurors on unavoidable accident, reasoning that the giving of an unavoidable accident instruction introduces a "straw issue" into deliberations and that the question for the jury is whether the defendant was negligent and whether his or her conduct proximately caused the injury. The instruction "diverts the attention of the jury from the primary issue of negligence, and necessarily creates the impression in the minds of the jurors of a second hurdle that plaintiff must overcome if he is to prevail." *Id.* The court concluded that the instruction only confuses the jury as to the main issue in the case—the principles of negligence. *Id.* The instruction "tends to mislead the jury by creating a spurious additional issue in the case when in fact the sole issue is the presence or absence of negligence proximately causing the accident." *Id.*

In *Randle v. Allen*, 862 P.2d 1329, 1336 (Utah 1993), the Utah Supreme Court held that the unavoidable accident instruction should not be given in future cases. In rejecting the instruction, the court gathered and accepted the criticisms of its use as expressed by the many courts that have considered the issue. The court reasoned as follows:

"An unavoidable accident instruction creates a substantial potential of confusing and misleading the jury. The descriptive terms used in the instruction, 'unavoidable' and 'accident,' can be misleading because of their commonly understood meanings. Webster defines 'accident' as 'a usually sudden event or change occurring without intent or volition through carelessness, unawareness, ignorance, or a combination of causes and producing an unfortunate result (a traffic accident in which several persons are injured).' A jury could rely on the general understanding that the term 'accident' is simply an unfortunate and unavoidable injury-causing event for which there is no responsibility, even though under traditional tort concepts the accident was caused by negligence.

"Compounding the confusion is the implication that 'if proved, ... [a finding of an unavoidable accident] constitutes a second ground of nonliability.' The instruction 'diverts the attention of the jury from the primary issue of negligence and necessarily creates the impression in the minds of the jurors of a second hurdle that plaintiff must overcome if he is to prevail.' In other words, the instruction creates 'a spurious additional issue in the case when in fact the sole issue is the presence or absence of negligence proximately causing the accident.'

"As a result, a jury faced with complex, conflicting, and less than compelling evidence and the imprecise rules of proximate cause and comparative negligence may be tempted to abandon a rigorous application of the instruction on the elements of negligence and burden of proof and return a verdict based on the simple notion that an accident was unavoidable or inevitable. As the California Supreme Court observed, 'The rules concerning negligence and proximate causation which must be explained to the jury are in themselves complicated and difficult to understand. The further complication resulting from the unnecessary concept of unavoidability or inevitability and its problematic relation to negligence and proximate cause can lead only to misunderstanding.'

"The instruction may be especially misleading when the alleged negligence occurs sometime prior to the injury-causing event. In such a case, a jury may focus on the immediate circumstances of the injury-causing event, instead of on acts that occurred sometime prior to the event. Thus, the instruction 'may in some situations obscure the fact that a defendant *is* responsible for the results of his negligence which has created a situation in which disaster has *then*, too late, become unavoidable.'

"Apart from the inherent confusion in an unavoidable accident instruction, the instruction tends to reemphasize the defendant's theory of the case, that the defendant was not negligent. To that extent, the instruction constitutes an inappropriate judicial comment on the evidence and could be viewed by the jury as a 'you-should-find-for-the-defendant' type of instruction.

"Of course, accidents do occur which might be unavoidable or for which the defendant or defendants are not negligent. In such cases, if the state of the evidence warrants it, the trial judge should direct a verdict, or the jury, applying proper instructions on the elements of negligence and burden of proof, should find no liability.

"Because an unavoidable accident instruction is not necessary, runs the risk of misleading the jury, and suggests that an improper type of analysis might be used to decide a case, more than one-third of the states have held that such an instruction should not be given. These courts have often reached this result by overruling well-established precedents to the contrary.

"Heretofore, the law in Utah has been that an unavoidable accident instruction may be given under certain circumstances, but those circumstances have been ill-defined with no clear guidelines. As demonstrated by this case, the instruction has been given when the evidence clearly establishes that one or more parties might be at fault. Because of the difficulties inherent in the instruction, we now hold that an unavoidable accident instruction should not hereafter be given in any case. Accordingly, we overrule our

prior cases to the extent they approve the use of the instruction, even in limited situations."

*Id.* at 1335–36 (citations omitted).

██ We now agree with those courts that have prohibited the use of the instruction. In light of the instruction's inherent weaknesses and the nationwide trend disfavoring its use, we hold that the unavoidable accident instruction should not be given in negligence actions in Maryland courts prospectively from the date this opinion is filed.[10] Accordingly, we overrule our cases that have approved of the use of the instruction. *See, e.g., State v. Lupton,* 163 Md. 180, 193–94, 161 A. 393, 399 (1932); *Kaline v. Davidson,* 146 Md. 220, 223–24, 126 A. 68, 69–70 (1924); *Sullivan v. Smith,* 123 Md. 546, 554, 91 A. 456, 458 (1914).

***JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AND REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENTS.***

---

**10.** We are not saying that counsel may not argue that a defendant, by the exercise of reasonable care, could not have avoided the accident, if there is evidence to support that argument. The specific instruction on unavoidable accident, however, should not be given for the reasons we have set forth. *See Sadorus v. Wood,* 230 A.2d 478, 481 (D.C.1967) (reversing judgment in favor of defendant because unavoidable accident instruction improperly given and noting that although counsel may argue that defendant could not have avoided the accident by exercise of reasonable care, instruction should have been omitted to avoid any misunderstanding by the jury that absence of negligence and unavoidable accident are different concepts and issues).